August W. DEMEULENAERE and Eldean M. DeMeulenaere, Plaintiffs-Respondents,

v.

TRANSPORT INSURANCE COMPANY, a foreign corporation, Plaintiff-Appellant,

SANGAMO WESTON, INC., a foreign corporation, and Fireman's Fund Insurance Company, a foreign corporation, Defendants.

Court of Appeals

*No. 83–394. Submitted on briefs October 11, 1983.—*
*Decided November 18, 1983.*
(Also reported in 342 N.W.2d 56.)

For the plaintiff-appellant the cause was submitted on the briefs of *Otjen & Van Ert, S.C.,* with *Dennis K. Sage* of counsel, of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the briefs of *Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C.,* with *Dean M. Horwitz* and *Virginia M. Antoine* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J.    Transport Insurance Co., the workers' compensation carrier for August W. DeMeulen-

aere's (August) employer, appeals from an order entered March 2, 1983, wherein the trial court approved the distribution of settlement proceeds of a third party action, pursuant to sec. 102.29 (1), Stats.[1] The trial court ruled

[1] Section 102.29 (1), Stats. reads as follows:

Third Party Liability. (1) The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 are applicable, or the adjustment of any such claim, affect the right of the injured employe or the employe's dependents to recover compensation. The employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death. However, each shall give to the other reasonable notice and opportunity to join in the making of such claim or the instituting of an action and to be represented by counsel. If a party entitled to notice cannot be found, the department shall become the agent of such party for the giving of a notice as required in this subsection and the notice, when given to the department, shall include an affidavit setting forth the facts, including the steps taken to locate such party. Each shall have an equal voice in the prosecution of said claim, and any disputes arising shall be passed upon by the court before whom the case is pending, and if no action is pending, then by a court of record or by the department. If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the injured employe or the employe's personal representative or other person entitled to bring action. Out of the balance remaining, the employer or insurance carrier shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter, except that it shall not be reimbursed for any payments of in-

that the amount Eldean M. DeMeulenaere (Eldean) received for her claim of loss of consortium was not subject to the distribution formula contained in sec. 102.29 (1). On appeal, Transport argues that the trial court erred by approving this apportionment scheme because an award for loss of consortium is subject to the distribution formula contained in sec. 102.29(1) and that it misused its discretion by approving the amount of $5,000 for Eldean's claim for loss of consortium. We hold that an award for loss of consortium is not to be considered in the distribution formula of sec. 102.29(1); however, because the trial court has failed to explicate its reasons for approving the settlement, we vacate the order and remand the cause with directions.

August was injured on January 30, 1978, while in the course of his employment with Express Freight Lines, Inc. Claiming that his accident occurred as a result of the defective design of a tachograph unit manufactured by Sangamo Weston, Inc., August commenced a third party products liability action, pursuant to sec. 102.29 (1), Stats., against Sangamo. As part of this action, Eldean had a claim for loss of consortium. Transport waived its right to join and participate in the prosecution of the third party action; however, it reserved its right to be reimbursed pursuant to sec. 102.29(1).

creased compensation made or to be made under s. 102.22, 102.57 or 102.60. Any balance remaining shall be paid to the employe or the employe's personal representative or other person entitled to bring action. If both the employe or the employe's personal representative or other person entitled to bring action, and the employer or compensation insurer, join in the pressing of said claim and are represented by counsel, the attorneys' fees allowed as a part of the costs of collection shall be, unless otherwise agreed upon, divided between such attorneys as directed by the court or by the department. A settlement of any 3rd party claim shall be void unless said settlement and the distribution of the proceeds thereof is approved by the court before whom the action is pending and if no action is pending, then by a court of record or by the department.

The parties negotiated a settlement of the claim for $20,000. The DeMeulenaeres requested the trial court to approve the settlement and the sec. 102.29(1), apportionment. The settlement provided that Eldean would receive $5,000 for her claim for loss of consortium with the remaining $15,000 to be distributed pursuant to the sec. 102.29(1) formula. Transport appeals from the trial court's order approving the apportionment.

Transport argues that the term, "claim," as used in sec. 102.29(1), Stats., encompasses all the various claims of all the parties including a spouse's claim for loss of consortium; and, therefore, any award for loss of consortium is subject to the distribution formula of sec. 102.29(1). We disagree with this contention.

It is a well-recognized principle of statutory construction that:

When the plain meaning of the words in a statute are [sic] apparent, a court need not resort to either construction or case law to bolster its recognition of that plain meaning. Where the statutory language is clear, no judicial rule of construction is permitted, and we must arrive at the intent of the legislature by giving the language its ordinary and accepted meaning. [Citations omitted.] *Guyette v. West Bend Mutual Insurance Co.,* 102 Wis. 2d 496, 500–01, 307 N.W.2d 311, 313 (Ct. App. 1981).

From a plain reading of sec. 102.29(1), Stats., we conclude that the term, "claim," encompasses only the claim of the employee, not a spouse's claim for loss of consortium. The language of the statute states that the claim is for "injury or death of an employe." There is no reference to a claim for loss of consortium, nor from a reading of the statute is there any reasonable basis from which it can be inferred.

To support its argument, Transport contends that, because a spouse's claim for loss of consortium is derivative of the employee's claim for injuries, the loss of consortium claim is included in the term, "claim," as used in sec. 102.29 (1), Stats. We cannot agree.

Our supreme court, when recognizing the individual right of the spouse to be compensated for loss of consortium in *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 557–58, 150 N.W.2d 137, 144–45 (1967), pointed out that a spouse's claim for loss of consortium was a separate cause of action. *See also Schwartz v. City of Milwaukee*, 54 Wis. 2d 286, 293, 195 N.W.2d 480, 484 (1972). Regarding this cause of action, the supreme court has stated:

"Consortium involves a broad range of elements such as love, companionship, affection, society, sexual relations, and the right of support or the performance of marital services, any one of which is sufficient to constitute a cause of action." The cause of action for consortium occasioned by an injury to one marriage partner is a separate cause of action belonging to the spouse of the injured marriage partner. A wife's loss of consortium cause of action is derivative "in the sense it arose out of or was occasioned by an injury to her husband." However, loss of consortium is a direct injury to the spouse who has lost the consortium. [Citations omitted.] *Peeples v. Sargent*, 77 Wis. 2d 612, 643, 253 N.W.2d 459, 471 (1977).

In recognizing that a cause of action for loss of consortium is a separate action which never belonged to the other spouse, the supreme court has held that this cause of action is not subject to the defenses which are available against the other spouse's cause of action. *Schwartz, supra*. The supreme court has also held that, because a claim for loss of consortium is a personal injury right of action belonging to the spouse, it does not vest in a bankruptcy trustee if a spouse is adjudicated bankrupt

prior to trial. *Peeples, supra,* at 643–44, 253 N.W.2d at 471–72.

Because a spouse's claim for loss of consortium is a separate cause of action which does not belong to the other spouse, we hold that a claim for loss of consortium is not included in the term, "claim," as used in sec. 102.29 (1), Stats.; and, therefore, it is not subject to the sec. 102.29(1) distribution formula.

As support for the trial court's order, the DeMeulenaeres refer this court to *Rascop v. Nationwide Carriers,* 281 N.W.2d 170 (Minn. 1979). We have reviewed this case and are left unpersuaded by its summary conclusion. *Rascop* held that the carrier had no standing to question the settlement and distribution because it failed to intervene in the action. In addition, the claim for loss of consortium was not cognizable under Minnesota's Workers' Compensation Act. *Id.* at 173.

We have discovered, however, several cases from other jurisdictions where a similar issue was presented. In *Lone v. Esco Elevators,* 259 N.W.2d 869 (Mich. App. 1977) the Michigan Court of Appeals was presented with the same situation. The Michigan court, noting the paucity of authority and without delineating its reasoning, stated:

> None of the previously cited authorities conclusively determine the question before us. Additional policy and statutory interpretation arguments could be made for both sides. But no definitive answer would ever emerge. After considering the competing arguments and policy considerations, we affirm the trial court's ruling that ECU is not entitled to any portion of Mrs. Lone's loss of consortium recovery. [Footnote omitted.] *Id.* at 874.

In *Brocker Manufacturing and Supply Co. v. Mashburn,* 301 A.2d 501 (Md. Ct. Spec. App. 1973) the Maryland Court of Special Appeals held that the employer's

insurance carrier was not entitled to share in the monies recovered by Mrs. Mashburn for her claim for loss of consortium. *Id.* at 508. The Maryland court, like the Michigan court, was unable to give any definitive reason for its ruling.

In *Eisner v. Hertz Corp.*, 407 N.E.2d 1286 (Mass. 1980) the Supreme Judicial Court of Massachusetts held that an employer's insurer was not entitled to reimbursement for the damages paid for loss of consortium because the wife did not receive any separate compensation payments for loss of consortium, and loss of consortium was not a compensable injury under Massachusetts' Workers' Compensation Act. *Id.* at 1290.

In *Department of Health and Rehabilitative Services v. McConkey*, 421 So. 2d 29 (Fla. Dist. Ct. App. 1982), the Florida Court of Appeals, explaining *Orange County v. Sealy*, 412 So. 2d 25 (Fla. Dist. Ct. App. 1982) stated that sums attributable to loss of consortium are to be excised from the net recovery to be shared with the compensation carrier on the theory that this element of damage is not reimbursable under the Florida Workers' Compensation Act. *McConkey, supra*, at 32 n. 1.

While we are not bound by these cases, we determine that they lend support for and are consistent with our holding above.

Lastly, Transport argues that the trial court misused its discretion by approving a disproportionate amount for Eldean's claim for loss of consortium. As support for this argument, Transport contends that an award of $5,000 for loss of consortium is "merely a subterfuge to accomplish a larger share of the ultimate recovery being passed on to Mr. and Mrs. DeMeulenaere than if the statutory formula is applied to the total proceeds of the third party claim."

A similar challenge was raised in *Rascop, supra.* The Minnesota Supreme Court allowed a $30,000 award for

loss of consortium where the total settlement was for $100,000. *Id.* at 173. In *Rascop,* the court reviewed similar cases from other jurisdictions and held that the Rascops' settlement was reasonable.[2]

To insure that the result of this opinion is not misapplied or abused, we urge trial courts to closely scrutinize settlements of this nature which appear to circumvent the effects of the distribution formula contained in sec. 102.29(1), Stats.

Because the record does not reflect the reasons for the trial court's determination regarding whether $15,000 for August's claim was a fair and reasonable amount in light of a total settlement of $20,000, we must remand the cause for such findings.

*By the Court.*—Order vacated and cause remanded with directions.

---

[2] The settlements reviewed by the *Rascop* court were: *Ossenfort v. Associated Milk Producers,* 254 N.W.2d 672, 686 (Minn. 1977) (where an award of $500,000 for loss of consortium was held not excessive where the injured husband had recovered $1,000,000 for personal injuries); *Brocker Mfg. and Supply Co. v. Mashburn,* 301 A.2d 501, 503 (Md. Ct. Spec. App. 1973) (where the employee's wife settled her claim for loss of consortium for $140,000, while the employee's claim was settled for $100,000); *Lone v. Esco Elevators,* 259 N.W.2d 869, 870 (Mich. App. 1977) (where the employee settled his claim for $65,000, and his wife received $60,000 for loss of consortium). *Rascop v. Nationwide Carriers,* 281 N.W.2d 170, 173 (Minn. 1979).